**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 26, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JUSTIN STEPP,

    Defendant - Appellant.

No. 23-2029

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:21-CR-01070-WJ-1)**

_____

Joel R. Meyers, Law Office of Joel R. Meyers LLC, Santa Fe, New Mexico, for
Defendant – Appellant.

Tiffany L. Walters, Assistant United States Attorney (Alexander M.M. Uballez, United
States Attorney, with her on the brief), Office of the United States Attorney,
Albuquerque, New Mexico, for Plaintiff – Appellee.

_____

Before **HOLMES**, Chief Judge, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

On February 7, 2021, police officers and paramedics responded to a call regarding

an apparent gunshot victim. Justin Stepp was found with a wounded leg in the passenger

seat of a car driven by his girlfriend. Officers also found a small, holstered firearm in the

car's open center console and ammunition under the passenger seat. Hours later, a search of Mr. Stepp's home uncovered multiple rounds of ammunition. Mr. Stepp was charged with one count of being a felon in possession of a firearm and ammunition; he proceeded to trial and was convicted by a jury. At sentencing, pursuant to the U.S. Sentencing Guidelines, the court calculated Mr. Stepp's base offense level as 20, accounting for his prior sentence for a crime of violence in 2002. Ultimately, the court sentenced Mr. Stepp to 72 months' incarceration. Mr. Stepp appealed.

Mr. Stepp argues that the evidence presented at trial was insufficient to find he constructively possessed a firearm or ammunition, and that the court clearly erred by including his 2002 conviction in its calculation of his base offense level. We conclude the evidence presented at trial was sufficient for a reasonable trier of fact to find, beyond a reasonable doubt, that Mr. Stepp had constructive possession of the ammunition found in his home. Because possession of the ammunition is independently sufficient to sustain Mr. Stepp's conviction, we do not address the sufficiency of the evidence regarding his possession of the firearm found in the car. We also conclude the district court did not clearly err in finding Mr. Stepp's 2002 conviction fell within the applicable fifteen-year lookback period for calculating his base offense level. Thus, we affirm Mr. Stepp's conviction and sentence.

# I.    BACKGROUND

## A.    *Factual History*[1]

On the evening of February 7, 2021, McKinley County Sheriff's Deputy Dewayne Holder responded to a call requesting assistance for an apparent gunshot victim. Deputy Holder located the victim in a parked car. The car's driver, Stefanie Ratliff, exited and identified herself. Deputy Holder approached the car from the driver's side and observed a man, later identified as Mr. Stepp, reclined in the passenger seat with a bloody t-shirt tied around his leg. Mr. Stepp was in obvious distress and requesting help. Deputy Holder assured him an ambulance was on the way. As he looked into the vehicle, Deputy Holder also noticed a small, holstered handgun lying in plain view in the center console, between the driver and passenger seats. Deputy Holder seized the firearm, which was fully loaded with five unspent .22 long-rifle cartridges. Deputy Holder noticed no indication that the gun had been recently fired.

Cibola County Deputy Brian Gardner, Sergeant Thomas Archuleta, and former Deputy Alan Roane also responded to the scene. A decision was made to seek a search warrant for the vehicle. Ms. Ratliff requested the return of her large, red wallet from the

---

[1] The following facts are drawn from the evidence presented at trial. Where there was conflicting evidence, we view the facts based on the evidence most favorable to the jury's verdict. *See United States v. Gregory*, 54 F.4th 1183, 1192 (10th Cir. 2022), *cert. denied*, No. 22-905, 2023 WL 2959422 (U.S. Apr. 17, 2023) ("In determining whether the government presented sufficient evidence to support the jury's verdict, this court must review the record de novo and ask only whether, taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find Defendant guilty beyond a reasonable doubt." (quotation marks omitted)).

3

vehicle. Officers returned the wallet, and the vehicle was sealed and towed to the Cibola County Sheriff's Office. A later search of the vehicle recovered two rounds of .22 caliber ammunition from under the front passenger seat.

At approximately 2:00 a.m., after paramedics had transported Mr. Stepp to a hospital, Deputy Holder drove Ms. Ratliff to the Quality Inn in Gallup, New Mexico. Based on Ms. Ratliff's account that Mr. Stepp had been shot in a random encounter near Bluewater Lake, Deputies Roane and Gardner proceeded to investigate that area. There they were joined by Cibola County Detective Anthony Kemp. Finding no evidence at the lake, they proceeded to Mr. Stepp's reported address, at his parents' home. The deputies informed Mr. Stepp's parents that he had been shot and taken to a hospital near Gallup, New Mexico. His parents informed the deputies that Mr. Stepp lived in the house across the street. Deputies Gardner and Roane proceeded to Mr. Stepp's house. They knocked, but no one answered.

Having observed blood on the home's front door jam and on the outside of a truck parked in the driveway, the deputies sought a search warrant for the house. After the warrant issued, officers searched the home. Their search recovered: men's and women's clothing, on the bed; a suitcase of women's clothing, in a living room; a personalized mousepad with a photo of Mr. Stepp and Ms. Ratliff, near a computer monitor displaying live video from home security cameras; 9mm and .223 ammunition, in upper cabinets on either side of the computer monitor; one 300 Blackout ammunition round on the living room floor, near men's shoes; and another 300 Blackout ammunition round on the floor,

4

under the men's shoes. Officers also noted what appeared to be blood at different spots throughout the house.

The search also recovered evidence officers believed indicated someone had entered the house while deputies were stationed outside, waiting for the warrant to issue. This evidence included a hospital bracelet, showing a time of 12:30 a.m. and date of 2-8-2021; a plastic bag containing personal items with a label from Gallup Indian Medical Center, dated 2-8-2021; and a Wal-Mart receipt, dated 2-8-2021 at 7:18, reflecting the purchase of rolled gauze wrap, pants, and socks. Officers also discovered the same red wallet that had been returned to Ms. Ratliff hours earlier and a hotel room key from the Quality Inn. They also found Mr. Stepp's driver's license in the home.

The same day the home was searched, Mr. Stepp and Ms. Ratliff were arrested on state charges of evidence tampering, obstruction, and accessory to felon in possession. These charges were later dismissed. Later that summer, Mr. Stepp was arrested on a federal charge of felon in possession.

### B.    Procedural History

#### 1.    Trial

In July 2021, Mr. Stepp was indicted on one count of felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924. Mr. Stepp proceeded to trial in April 2022. At trial, the Government presented Deputy Gardner's lapel video of the search of Mr. Stepp's home, photos from the search of the car and Mr. Stepp's home, as well as the firearm and ammunition recovered from the car and the home. The jury also heard testimony from Deputy Holder, former Deputy Roane, Deputy

5

Gardner, Detective Kemp, and Special Agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

At the close of evidence, Mr. Stepp moved for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29. Mr. Stepp argued that, based on the joint occupancy of the car and home by Mr. Stepp and Ms. Ratliff, the Government had failed to present any evidence to establish Mr. Stepp's constructive possession of the firearm or ammunition. Concluding the Government had presented a sufficient case to send to the jury, the district court denied Mr. Stepp's Rule 29 motion on this ground. The jury found Mr. Stepp guilty on the sole felon-in-possession charge.

## 2.    Sentencing

In July 2022, the United States Probation Office ("Probation") released Mr. Stepp's initial Presentence Investigation Report ("PSR"), calculating his base offense level as 24. Mr. Stepp filed numerous objections to the PSR, including, as relevant to this appeal, two objections to Probation's determination of his base offense level. Mr. Stepp's criminal history included two voluntary manslaughter convictions. For the first manslaughter conviction, Mr. Stepp was sentenced, on July 12, 2002, to five years' incarceration. Mr. Stepp committed the second manslaughter, for which he was sentenced on March 28, 2006, to one year of incarceration, while he was incarcerated on his first sentence. Mr. Stepp argued Probation miscalculated his base offense level because neither of his two previous manslaughter convictions should be counted as crimes of violence under Guidelines § 2K2.1, contending they fell outside the applicable lookback periods.

6

Pursuant to the Guidelines, sentences of 13, or fewer, months count as crimes of violence under § 2K2.1 only if they were imposed within the ten years preceding the commission of the instant offense; sentences exceeding 13 months count only if they resulted in the defendant being incarcerated within the fifteen years preceding the instant offense. United States Sentencing Commission, *Guidelines Manual*, § 4A1.2(e)(1)–(2) (Mar. 2022). Mr. Stepp contended his 2002 conviction fell outside the applicable lookback period because his incarceration ended no later than December 27, 2005, more than fifteen years before he committed the instant offense, on February 7, 2021. Probation disputed Mr. Stepp's calculation of his incarceration's end date and maintained that his 2002 conviction was properly included in determining his base offense level. But Probation, the Government, and the court agreed that Mr. Stepp's 2006 conviction should not have been included as it fell outside the applicable ten-year lookback period, and the court accordingly lowered his base offense level to 20.[2]

On October 17, 2022, the district court held a hearing to address Mr. Stepp's objections. The Government called Denise Chavez from the New Mexico Corrections Department. In her role for the division of Offender Management Services, Ms. Chavez oversees the interpretation of judgments and sentences, application of good time credits

---

[2] Mr. Stepp's 2006 conviction was subject to a ten-year lookback period, because the sentence imposed was less than 13 months. Mr. Stepp was sentenced for his second manslaughter conviction on March 28, 2006, more than ten years before the instant offense on February 7, 2021. Thus, applying the ten-year lookback period, Mr. Stepp's 2006 conviction should not have been included in the calculation of his base offense level under Guidelines § 2K2.1.

and laws, and release of inmates. According to Ms. Chavez, Mr. Stepp was released from custody for his 2002 conviction on February 16, 2006, although he remained in continuous custody due to his 2006 manslaughter conviction. After hearing argument from counsel, the court took Mr. Stepp's objection to the inclusion of his 2002 conviction under advisement. In accordance with the court's rulings on Mr. Stepp's other objections, Probation filed a revised PSR.

The court reconvened on January 11, 2023, when it ruled on Mr. Stepp's remaining objection and pronounced his sentence. In an oral ruling, followed by a written order, the court found Mr. Stepp's 2002 conviction fell within the applicable lookback period for calculating his base offense level. Based on the New Mexico Corrections Department's documentation and Ms. Chavez's testimony, the court found "it most logical to consider . . . February 16, 2006, to be the final day of [Mr. Stepp's] sentence on the 2002 offense"—less than fifteen years prior to the instant offense on February 7, 2021. Appellant's Br. Attach. B at 6–7. Accordingly, the court calculated Mr. Stepp's base offense level as 20, and his criminal history as Category VI, making his advisory Guidelines sentencing range 70 to 87 months. Ultimately, the court sentenced Mr. Stepp to 72 months' incarceration. Mr. Stepp filed this timely appeal.

## II.    DISCUSSION

Mr. Stepp challenges the sufficiency of the evidence to support his felon-in-possession conviction and the district court's calculation of his base offense level. We consider each argument in turn.

### A.    *Sufficiency of the Evidence*

#### 1.    Standard of Review

We review the sufficiency of the evidence to support a conviction de novo to "determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *United States v. Gordon*, 710 F.3d 1124, 1141 (10th Cir. 2013) (quotation marks omitted). In conducting this review, "we consider all of the evidence, direct and circumstantial, along with reasonable inferences, but we do not weigh the evidence or consider the relative credibility of witnesses." *United States v. Griffith*, 928 F.3d 855, 868–69 (10th Cir. 2019) (quotation marks omitted). Thus, our review is limited and deferential; "we may reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 869 (quotation marks omitted).

#### 2.    Application

Mr. Stepp was indicted on one count of felon in possession of a firearm or ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924. *See* 18 U.S.C. § 922(g)(1) ("It shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition[.]"). To convict Mr. Stepp under § 922(g)(1), the Government had to prove, among other things, that he knowingly possessed either a firearm or ammunition. *Cf. United States v. Veng Xiong*, 1 F.4th 848, 852 (10th Cir. 2021) ("[T]o convict Defendant . . . , the Government had to prove . . .

Defendant possessed, actually or constructively, at least one of the firearms identified[.]"). Thus, the jury could have convicted Mr. Stepp based on a finding that he possessed either the firearm found in the car, or the ammunition found in his home, or both. *See* Appellee's Br. at 14; Oral Argument at 11:40–12:09 (Appellant, conceding evidence sufficient to support finding either possession of the firearm found in the car or the ammunition found in the home would sustain conviction). Because we conclude the evidence presented at trial was sufficient for a reasonable trier of fact to find Mr. Stepp possessed the ammunition found in his home, we do not address the sufficiency of the evidence regarding possession of the firearm found in the car.

Possession may be actual or constructive. *See Veng Xiong*, 1 F.4th at 852. Here, both parties agree the Government lacked evidence that Mr. Stepp actually possessed the ammunition. Mr. Stepp contests the sufficiency of the evidence to demonstrate his constructive possession. "[C]onstructive possession exists when a person[,] not in actual possession[,] knowingly has the power and intent at a given time to exercise dominion or control over an object." *United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016) (citing *Henderson v. United States*, 575 U.S. 622, 626 (2015)); *see Henderson*, 575 U.S. at 626 ("Constructive possession is established when a person, though lacking such physical custody, still has the power *and intent* to exercise control over the object." (emphasis added)). When a defendant has exclusive control over the premises where an object is found, "a jury may infer constructive possession." *Little*, 829 F.3d at 1183. But when a defendant jointly occupies the premises, the Government must "show a nexus between the defendant and the firearm [or ammunition]." *United States v. Benford*, 875

F.3d 1007, 1015 (10th Cir. 2017). "That is, the [G]overnment must demonstrate the defendant knew of, had access to, and intended to exercise dominion or control over the contraband." *United States v. Johnson*, 46 F.4th 1183, 1187 (10th Cir. 2022). This "may be proved by circumstantial as well as direct evidence." *Id.* (quotation marks omitted). Multiple individuals may have constructive possession of the contraband; exclusive possession is not required. *See United States v. McKissick*, 204 F.3d 1282, 1291 (10th Cir. 2000) (discussing joint occupancy and nonexclusive possession). But the defendant's "joint occupancy alone" cannot sustain an inference of constructive possession. *United States v. Hishaw*, 235 F.3d 565, 571 (10th Cir. 2000).

Mr. Stepp does not dispute his joint occupancy of the home. But he argues no evidence was presented at trial to demonstrate the requisite nexus between himself and the ammunition. Specifically, Mr. Stepp contends there was no evidence linking him to the ammunition and nothing to support a finding that he "had knowledge of" or "intended to exercise control over" the ammunition.[3] Appellant's Br. at 13.

---

[3] Mr. Stepp also implies that police falsified or manipulated evidence, as portrayed in photo exhibits 9, 30, 32, 41, and 51, to create the appearance of a greater connection between Mr. Stepp and the ammunition than actually existed. But Mr. Stepp made no objection to the introduction of these exhibits at trial, and does not do so on appeal. Therefore, any such argument is forfeited. *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) (noting that arguments not raised before the district court are forfeited and will be considered only to the extent a party argues plain error on appeal). Additionally, absent any substantive support developed in the record, we will not accept Mr. Stepp's speculation that officers contrived the evidence recovered from their search of his home. *Cf. United States v. Cardenas*, 864 F.2d 1528, 1532–33 (10th Cir. 1989) ("Absent some showing by the defendant that the evidence has been tampered with, it will not be presumed that the investigators who had custody of it would do so." (quotation marks and brackets omitted)).

The Government responds that, treating the home as jointly occupied,[4] sufficient evidence was presented at trial for a rational trier of fact to find the required nexus between Mr. Stepp and the ammunition. The Government argues Mr. Stepp's knowledge, access, and intent to control the ammunition may be inferred from its location: organized in cabinets in an actively used home office and scattered on the living room floor intermixed with Mr. Stepp's personal belongings. Viewed in the light most favorable to the verdict, the Government contends this evidence was sufficient for a reasonable juror to find Mr. Stepp constructively possessed the ammunition found in his home. We agree.

In considering joint occupancy, presence alone does not suffice to show constructive possession of a firearm or ammunition. *See United States v. Taylor*, 113 F.3d 1136, 1146 (10th Cir. 1997) ("[J]oint occupancy of a bedroom, without more, is insufficient to support a conviction of constructive possession of a gun found in a bedroom."). Thus, we look to what other evidence supports an inference that Mr. Stepp had access to, knew of, and intended to exercise dominion or control over the ammunition found in his home. *See, e.g.*, *United States v. Campbell*, 763 F. App'x 745, 749 (10th Cir. 2019) (concluding the Government had met its burden of demonstrating

---

[4] The Government's brief contends the evidence presented at trial was ambiguous regarding whether Ms. Ratliff lived at the home and a jury could reasonably conclude Mr. Stepp was the sole occupant. This conclusion alone could suffice to show Mr. Stepp's constructive possession of the ammunition. *See United States v. Little*, 829 F.3d 1177, 1183 (10th Cir. 2016) (concluding that a jury may infer constructive possession from a defendant's exclusive occupancy and control of the premises). However, at oral argument, the Government conceded this matter is properly viewed as a joint occupancy case. Oral Argument at 22:05–22:35 (Government conceding home was jointly occupied). Thus, we consider it as such.

constructive possession where evidence showed the firearm was found in a toolbox which defendant had been actively using to work on a go-cart);[5] *United States v. Martinez*, 749 F. App'x 698, 704–05 (10th Cir. 2018) (concluding evidence of constructive possession was sufficient where (1) firearm was found in defendant's bedroom where she kept her personal effects and in a safe where informant testified defendant concealed drugs, defendant was a "high-level drug dealer", and firearm was a "tactical type" used for self-defense; and (2) ammunition was found in plain view on top of defendant's bed);[6] *United States v. Mendez*, 514 F.3d 1035, 1042 (10th Cir. 2008), *abrogated on other grounds by*

---

[5] In *United States v. Campbell*, we reviewed the evidence supporting constructive possession in the context of appellant's argument that omission of the intent requirement in jury instructions regarding constructive possession constituted plain error. 763 F. App'x 745 (10th Cir. 2019) (unpublished) (citing *Henderson v. United States*, 575 U.S. 622 (2015)). Under plain error review, we look to the evidence to determine whether, but for the error, there is a "reasonable probability that . . . the result of the proceeding would have been different." *United States v. Veng Xiong*, 1 F.4th 848, 853 (10th Cir. 2021) (citing *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)). Here, we may reverse Mr. Stepp's conviction "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Griffith*, 928 F.3d 855, 869 (10th Cir. 2019) (quotation marks omitted). Demonstrating a "reasonable probability" of acquittal is a distinct and less demanding standard than demonstrating that "no rational trier of fact" could have convicted beyond a reasonable doubt. *See, e.g.*, *United States v. Samora*, 954 F.3d 1286, 1290–96 (10th Cir. 2020) (finding evidence was sufficient to sustain conviction but reversing and remanding because the court plainly erred by omitting the intent requirement in jury instructions); *United States v. Benford*, 875 F.3d 1007, 1018, 1021 (10th Cir. 2017) (reversing based on plainly erroneous jury instructions but commenting, in dicta, that "a reasonable jury could conclude from th[e] evidence that [the defendant] intended to exercise control" of the firearms found in his home).

[6] Although *Campbell*, 763 F. App'x 745, and *United States v. Martinez*, 749 F. App'x 698 (10th Cir. 2018), are unpublished and therefore not binding, they may be cited for their persuasive value. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

*Henderson*, 575 U.S. 622 (concluding sufficient evidence demonstrated defendant "had knowledge of and access to the firearms, as well as the ability and intention to control them" where shotgun was found sitting in the open in another bedroom, accessible to anyone in the house, defendant admitted to knowing about it, and ammunition was found throughout the house).

Here, the ammunition found in Mr. Stepp's home was located in cabinets in a home office space, along with other personal effects, and on the floor under and around men's shoes and other items. Physical evidence demonstrated Mr. Stepp actively used the home and the office space. The office included a monitor, displaying live video from home security cameras, and a custom mouse pad featuring a picture of Mr. Stepp and Ms. Ratliff. And, in addition to the men's clothing and shoes, several of Mr. Stepp's personal belongings were found in the home including his driver's license; a hospital admission bracelet, dated 2-8-2021 at 12:30 a.m.; and a bag of items with a label from Gallup Indian medical center, also dated 2-8-2021. The hospital bracelet and bag of items may reasonably be inferred to belong to Mr. Stepp, who was transported to a Gallup hospital in the early hours of February 8. Viewed in the light most favorable to the Government, this evidence supports a rational inference that Mr. Stepp actively used the home, including the office area, and had in fact reentered the home after his discharge from the hospital and before officers conducted their search.

The ammunition's presence in areas Mr. Stepp actively used, alongside his personal belongings, supports a rational inference that he had access to, knowledge of, and an intent to control the ammunition. *See Campbell*, 763 F. App'x at 749 (firearm

14

found in toolbox defendant actively used); *Martinez*, 749 F. App'x at 705 (ammunition found in plain view on top of defendant's bed); *Mendez*, 514 F.3d at 1042 (firearm found in plain view, accessible to anyone in the house, and ammunition found throughout the house); *cf. United States v. Taylor*, 113 F.3d 1136, 1145–46 (10th Cir. 1997) (no evidence defendant used closet where firearm was found); *United States v. Mills*, 29 F.3d 545, 550 (10th Cir. 1994) (no evidence defendant knew of firearms roommate had concealed). Although the evidence may also support other inferences, evidence sufficient to support the jury's verdict need not exclude all other hypotheticals or possibilities. *See United States v. Davis*, 437 F.3d 989, 993 (10th Cir. 2006). It need only demonstrate that a rational trier of fact could find, beyond a reasonable doubt, all elements necessary to convict. *Id.* Thus, we conclude the evidence was sufficient to support Mr. Stepp's conviction.

## B. Base Offense Level Calculation

### 1. Standard of Review

Application of the Guidelines presents mixed questions of fact and law. *United States v. Roberts*, 898 F.2d 1465, 1469 (10th Cir. 1990). We review "legal questions regarding the application of the Sentencing Guidelines de novo, and [the] district court's

factual findings for clear error."[7] *United States v. Craine*, 995 F.3d 1139, 1153 (10th Cir. 2021) (quotation marks and ellipses omitted). Here, Mr. Stepp challenges only the district court's factual finding that he completed his term of incarceration for his 2002 conviction on February 16, 2006, contending that instead his term of incarceration ended on December 27, 2005. Such factual findings are clearly erroneous "only if they are without factual support in the record" or if, "considering all the evidence, [we are] left with a definite and firm conviction that a mistake has been made." *United States v. Lozano*, 921 F.3d 942, 946 (10th Cir. 2019). "In general, factual findings at sentencing must be supported by a preponderance of the evidence." *United States v. Stein*, 985 F.3d 1254, 1266 (10th Cir. 2021).

2.    **Legal Background**

The base offense level for a violation of 18 U.S.C. § 922(g) is calculated pursuant to Guidelines § 2K2.1, which states in relevant part:

(a) Base Offense Level (Apply the Greatest): . . .

(4) 20, if . . . (A) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence . . .

---

[7] Ultimately, "[f]ailure to calculate the correct Guidelines range constitutes procedural error," *Rosales-Mireles v. United States*, 585 U.S. -- , 138 S. Ct. 1897, 1904 (2018) (alteration in original) (quoting *Peugh v. United States*, 569 U.S. 530, 537 (2013)), and is "harmless and not reversible if the record viewed as a whole clearly indicates the district court would have imposed the same sentence had it not relied on the procedural miscue(s)," *United States v. Lee*, 71 F.4th 1217, 1221 (10th Cir. 2023) (internal quotation marks omitted). Because we conclude the district court did not clearly err in its factual findings related to calculating Mr. Stepp's Guidelines range, we do not consider the harmlessness of any error.

(6) 14, if the defendant (A) was a prohibited person at the time the
defendant committed the instant offense[.]

U.S.S.G. § 2K2.1. However, crimes of violence will count for purposes of

§ 2K2.1(a)(4)(A) only if they receive criminal history points under Guidelines

§ 4A1.1(a), (b), or (c). *Id.* § 2K2.1, comment. (n.10). A "sentence of imprisonment

exceeding one year and one month" will receive criminal history points only if it "was

imposed within fifteen years" of the commission of the instant offense or "resulted in the

defendant being incarcerated during any part of such fifteen-year period." *Id.*

§ 4A1.2(e)(1); *see also id.* § 4A1.1, comment. (n.1).

Mr. Stepp concedes that he was a prohibited person at the time of the instant

offense, for purposes of Guidelines § 2K2.1(a)(6)(A); that his 2002 conviction qualifies

as a crime of violence; and that the applicable lookback period for his 2002 conviction

ends February 7, 2006—fifteen years prior to the date of the instant offense. *See*

Appellant's Br. at 18–19. However, he argues his 2002 conviction does not fall within the

fifteen-year lookback period and thus does not count for purposes of Guidelines

§ 2K2.1(a)(4)(A). Therefore, Mr. Stepp contends his base offense level should be 14, not

20.

Ordinarily, determining whether a defendant was serving a term of incarceration

within the fifteen years before his commission of the instant offense will be a simple

matter of looking to his release date. However, because Mr. Stepp committed the

subsequent offense while in custody, he remained in the continuous custody of the state

of New Mexico between the end of his incarceration for his 2002 conviction and the

beginning of his sentence for his 2006 conviction. Under New Mexico law, "[w]henever an inmate in a penal institution of this state . . . is sentenced for committing any felony while he is an inmate, the sentence imposed shall be consecutive to the sentence being served[.]" N.M. Stat. Ann. § 31-18-21(A) (1978). While a person held in presentence confinement is "given credit for th[at] period . . . against any sentence finally imposed for th[e] offense," *id.* § 31-20-12, "a defendant is not entitled to double credit when sentenced consecutively on multiple charges or in multiple cases," *State v. Cerda*, 519 P.3d 87, 89 (N.M. Ct. App. 2022), *cert. denied* (Sept. 23, 2022).

Taken together, these rules mean that, after his period of incarceration for his 2002 conviction ended, Mr. Stepp remained in custody on presentence confinement for his 2006 conviction. That period of presentence confinement was then credited against Mr. Stepp's sentence for his 2006 conviction. While both parties agree Mr. Stepp's sentence for his 2002 conviction began on July 12, 2002; his sentence for his 2006 conviction began on March 28, 2006; and he was released from New Mexico's custody on December 18, 2006, they dispute when—between July 12, 2002, and March 28, 2006—Mr. Stepp's incarceration for his 2002 conviction ended and his presentence confinement on his 2006 conviction began.

### 3.     Application

The district court's finding, that Mr. Stepp's term of incarceration for his 2002 sentence ended on February 16, 2006, was well supported by the record and is therefore, not clearly erroneous. While there are apparent errors in the New Mexico Corrections Department's documents regarding Mr. Stepp's 2006 conviction, the documents from his

18

2002 conviction—the conviction at issue in the calculation of his base offense level—clearly indicate his sentence of confinement for that offense ended on February 16, 2006. *See* ROA Vol. I at 92 (listing discharge date of February 16, 2006). Despite the errors in the documents related to Mr. Stepp's 2006 conviction, this date remains constant. *See id.* at 94 (starting presentence confinement credit on February 17, 2006); *id.* at 97 (starting presentence confinement credit on February 17, 2006).

Mr. Stepp contends his incarceration for his 2002 conviction ended on December 27, 2005—more than fifteen years before his commission of the instant offense on February 7, 2021. For support, Mr. Stepp looks to the initial judgment and Good Time Sheet for his 2006 manslaughter conviction, committed while he was incarcerated for his 2002 conviction. Mr. Stepp was sentenced for his 2006 conviction on March 28, 2006. His initial judgment states that he "shall be given credit for ninety [days] for time served starting on February 17, 2006[.]" ROA Vol I at 94. This was clearly an error, as there are not ninety days between February 17 and March 28. This error was reiterated by Mr. Stepp's Good Time Sheet for his 2006 conviction, giving Mr. Stepp three months of presentence credit. Mr. Stepp attributes this error to the date he began receiving presentence credit, rather than the amount of presentence credit due, and accordingly subtracts ninety days from the date of sentencing, March 28, 2006, and contends he began receiving presentence confinement credit on December 28, 2005. Thus, Mr. Stepp argues his incarceration for his 2002 conviction ended on December 27, 2005.

But, as the Government notes, the judgment for Mr. Stepp's 2006 conviction was later amended, removing the reference to ninety days' presentence credit and instead

19

providing that Mr. Stepp "shall be given credit for time served starting on February 17, 2006 . . . to the time of filing the judgment in this matter[.]" ROA Vol. I at 97. Although there are errors in the initial and amended judgments for Mr. Stepp's 2006 conviction,[8] the date of February 17, 2006, is consistently referenced as the date from which his presentence confinement credit began to accrue. More to the point, the judgment and Good Time Sheet for Mr. Stepp's 2002 conviction show Mr. Stepp was sentenced to five years' incarceration on July 12, 2002, and had a final discharge date of February 16, 2006, after accounting for presentence confinement and good time credit. As the Government argues, the date of February 16, 2006, is consistent across the New Mexico Corrections Department's documents, and is supported by Ms. Chavez's testimony, as the date when Mr. Stepp finished serving his custody sentence for his 2002 conviction. The Government maintains the district court did not clearly err by crediting this evidence and

---

[8] When it comes to the calculation of presentence confinement credit for Mr. Stepp's 2006 conviction, the New Mexico Corrections Department's documentation presents several errors: (1) the initial judgment lists the sentencing date as August 10, 2006, not March 28, 2006; (2) the initial judgment calculates ninety days' presentence confinement from February 17, 2006, to the date of sentencing; (3) the amended judgment lists the sentencing date as August 18, 2006, not March 28, 2006; (4) the Good Time Sheet attributes three months' presentence confinement credit prior to Mr. Stepp's sentencing date of March 28, 2006; and (5) the Good Time Sheet attributes an additional three months and three days' presentence confinement credit based on the erroneous sentencing date from the amended judgment. According to Ms. Chavez, the errors in Mr. Stepp's Good Time Sheet for his 2006 conviction resulted in Mr. Stepp being "given too much credit" such that "he was probably released a little bit early." Supp. ROA Vol. I at 51–52. The district court noted these errors and determined "not [to] compound the error by continuing to rely on the mistake when making its timekeeping determination[]." ROA Vol. I at 108.

refusing to rely on the erroneous calculation of ninety days' presentence credit for Mr. Stepp's 2006 conviction. We agree.

The district court adhered to the date consistent across the Good Time Sheet for Mr. Stepp's 2002 conviction, the initial judgment for his 2006 conviction, and the amended judgment for his 2006 conviction and found Mr. Stepp's term of incarceration for his 2002 conviction ended February 16, 2006—less than fifteen years before the commission of the instant offense on February 7, 2021. While Mr. Stepp points to information in the New Mexico Corrections Department's documentation that suggests his term of confinement for his 2002 conviction ended earlier, this contrary information does not lead us to "a definite and firm conviction that a mistake has been made." *Lozano*, 921 F.3d at 946. There was sufficient foundation in the record for the district court to reasonably find that, more likely than not, Mr. Stepp's term of confinement for his 2002 conviction ended on February 16, 2006. Thus, we conclude the district court's factual finding pertaining to its calculation of Mr. Stepp's base offense level was not clearly erroneous.

## III.    CONCLUSION

We AFFIRM Mr. Stepp's conviction and sentence.