**F I L E D**

**UNITED STATES COURT OF APPEALS**

**November 9, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

MARCELLO JIMENEZ,

        Defendant - Appellant.

No. 05-2152
(D. Ct. No. CR-03-1832 RB)
(D. N. Mex.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **KELLY**, and **MURPHY**, Circuit Judges.

Following a two-day trial, a jury found Defendant-Appellant Marcello Jimenez guilty of one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, both in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). He was sentenced to 235 months' imprisonment. On appeal, Mr. Jimenez argues that (1) the District Court erred in denying his motion to suppress evidence based on a deficient warrant; (2) an alleged error in the jury instructions misstated the law on constructive possession, confused the jury, and lowered the Government's burden of

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

proof; and (3) there is insufficient evidence to sustain his conviction. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I.  BACKGROUND

On February 8, 2003, an unknown person shot Tyran White in the back of the neck while Mr. White was driving. Eyewitnesses identified the shooter as a "Spanish" male driving a dark-colored Dodge Neon. Witness accounts conflicted as to whether the car was purple or black. In addition, witness accounts indicated that the shooter was with a female passenger. One eyewitness, a passenger in the car with Mr. White, completed a composite drawing of the suspect. An officer who saw the sketch believed it resembled Mr. Jimenez. Another officer knew that Mr. Jimenez's girlfriend was Michelle Flores and that she resided at 334 E. Bonney. Therefore, on February 9 and 10, Roswell New Mexico Police Officer Kenneth Roberts conducted surveillance at 334 E. Bonney; on both days, he observed a black Neon registered to Ms. Flores parked at the address, as well as a truck registered to Mr. Jimenez or Cecilia Marquez. The address listed on the truck's registration was also 334 E. Bonney. On February 10, three witnesses to the shooting viewed photo arrays that included Mr. Jimenez's photograph. Two of the three witnesses, both of whom were in the car with the shooting victim, identified Mr. Jimenez as the shooter. One identified Mr. Jimenez with 70% certainty, the other with 50% certainty.

On February 10, Officer Roberts obtained and executed a search warrant at 334 E. Bonney. The warrant authorized officers to search for "any firearms, any pieces of

firearms, any ammunition or parts of ammunition, any carrying devices for firearms, any cleaning products for firearms, [and] any receipts showing the selling or ownership of firearms." Ms. Flores and her son Gilbert were both present during the search. When officers arrived at the home, Gilbert was sitting on a couch in the den with an unloaded .223 caliber rifle next to him. Gilbert indicated that there were other guns in the house, that he owned them all, and that he kept them locked in a gun safe. Indeed, there was a gun safe in the dining room. After retrieving the key from the pocket of a shirt hanging in the dining room, Gilbert unlocked the safe for the officers to search. The officers found seven firearms inside.

Not all of the firearms were in the safe. The officers also found a .410 gauge shotgun on top of a plastic cart in the dining room, as well as a partially dissembled M200 shotgun inside a closet. In addition, officers found ammunition unsecured throughout the house, including .410 gauge shotgun shells and .22 caliber ammunition on top of the gun safe, and .22 and .380 caliber ammunition inside a kitchen cabinet. Mr. Jimenez was subsequently arrested for being a felon in possession of firearms and ammunition.[1]

Prior to trial, Mr. Jimenez moved to suppress evidence seized at 334 E. Bonney, arguing that there were insufficient facts in the affidavit to support a finding of probable cause, that the warrant was constitutionally overbroad, and that the officers exceeded the scope of the warrant by seizing firearms and letters addressed to Mr. Jimenez. The

---

[1]Officers did not find evidence linking Mr. Jimenez to the shooting of Mr. White.

District Court granted the motion as to the letters, but denied the motion with respect to the firearms.  At trial, Mr. Jimenez objected to a jury instruction related to the issue of constructive possession, but the District Court overruled his objection.  Mr. Jimenez contests these rulings and also argues that there was insufficient evidence to support his conviction.

## II.  DISCUSSION

### A.  Motion to Suppress

Mr. Jimenez appeals the District Court's denial of his motion to suppress evidence seized at 334 E. Bonney, arguing that (1) the affidavit underlying the search warrant was insufficient to support a finding of probable cause, (2) the warrant failed to specify with particularity the things to be seized, and (3) the officers executing the search exceeded the scope of the warrant by seizing firearms that were not handguns.  In reviewing a district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous.  *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2005).  "Determinations relating to the sufficiency of a search warrant and the applicability of the good-faith exception are conclusions of law, however, which this Court reviews de novo."  *Id.*  In this case, we need not decide whether probable cause existed because the officers' conduct in executing the search warrant clearly falls within the good-faith exception to the exclusionary rule.  *Danhauer*, 229 F.3d at 1005 (courts have discretion to proceed directly to an analysis of the good-faith exception to the exclusionary rule

without first addressing the underlying Fourth Amendment question). We also conclude that although the warrant failed to specify with particularity the things to be seized, the officers' reliance on the overly broad warrant also falls within the good-faith exception to the exclusionary rule.

The Supreme Court in *United States v. Leon* established that evidence obtained pursuant to a warrant that is later found to be defective is not properly excluded when officers rely on the warrant in objective good faith. 468 U.S. 897, 922 (1984). The exclusion of "reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate," *id.* at 913, does not serve the primary purpose of the Fourth Amendment exclusionary rule—deterrence of police misconduct, *see id.* at 913–23. There are four circumstances, however, in which an officer cannot be found to have relied on a warrant in good faith: (1) when the issuing magistrate was misled by an affidavit containing false information or information that the affiant should have known was false but for his reckless disregard for the truth; (2) when the issuing magistrate wholly abandoned his judicial role; (3) when the affidavit supporting a warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that the executing officer could not reasonably believe it was valid. *Id.* at 923.

*1. Nexus Between Place to be Searched and Suspected Criminal Activity*

Mr. Jimenez first challenges the magistrate judge's determination of probable cause, arguing that the facts alleged in the affidavit did not provide enough information to

establish a nexus between the place searched, 334 E. Bonney, and the items sought (in this case, firearms and ammunition related to the February 8 shooting). *See United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005) ("It is well-settled that for probable cause to exist there must be a nexus between the contraband to be seized or suspected criminal activity and the place to be searched." (quotation marks and alteration omitted)). Specifically, Mr. Jimenez claims that the affidavit lacked any indication that he lived at 334 E. Bonney and that, in any event, the affidavit lacked a declaration as to why the affiant believed evidence or instrumentalities of the battery might be found in the house. Therefore, according to Mr. Jimenez, the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923.

The affidavit provided the following information: (1) a "Spanish" man in a dark-colored (either purple or black) 1997 or 1998-model Dodge Neon shot the victim on February 8, 2003; (2) a female was a passenger in the Neon at the time of the shooting; (3) Mr. Jimenez matched the description of the shooter provided by eyewitnesses; (4) two of three eyewitnesses, both passengers in the car with the victim, identified Mr. Jimenez as the shooter from photo arrays, one with 50% certainty and the other with 70% certainty; (5) an officer knew that Mr. Jimenez's girlfriend was Michelle Flores; (6) Ms. Flores owned a black 1997 Neon; (7) she resided at 334 E. Bonney; (8) her Neon was parked at 334 E. Bonney on February 9 and 10, 2003; (9) a truck registered to 334 E. Bonney in the names of Mr. Jimenez or Cecilia Marquez was also parked at 334 E.

Bonney on February 9 and 10; and (10) both Ms. Flores and Mr. Jimenez have "Spanish" last names.

We first note that "the affidavit supporting the search warrant need not contain direct evidence or personal knowledge that the items sought are located at the place to be searched." *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999). Rather, the magistrate judge "may draw reasonable inferences from the material provided in the warrant application." *Id.* We also note that for certain types of evidence, it is reasonable to assume such evidence would be kept at a suspect's residence "and an affidavit need not contain personal observations that a defendant did keep such evidence at his residence." *Id.* at 1184 (narcotics and drug-trafficking records). As such, the fact that the warrant lacked a declaration that evidence of the shooting is likely to be found at 334 E. Bonney does not necessarily render the warrant invalid. *See United States v. Reyes*, 798 F.2d 380 (10th Cir. 1986) (probable cause to search defendant's residence existed though affidavit lacked any reference to the conducting of unlawful activities at the residence). Nevertheless, Mr. Jimenez points out that the affidavit did not specify that he lived at 334 E. Bonney. In the absence of such an allegation, he argues, there is nothing to connect the evidence sought and the place to be searched. As noted above, however, we need not decide whether the magistrate judge could reasonably infer from the affidavit that Mr. Jimenez lived at 334 E. Bonney and that evidence of the battery was likely to be found there because the officers' reliance on the warrant was objectively reasonable.

"When reviewing the reasonableness of an officer's reliance upon a search

warrant, this court must examine the underlying documents to determine whether they are devoid of factual support." *Danhauer*, 229 F.3d at 1006 (quotation marks omitted). In *Gonzales*, this Court upheld the district court's determination that the good-faith exception did not apply. 399 F.3d 1225. In that case, the affidavit sought permission to search "321 E. Church" for firearms and ammunition. The only information in the affidavit linking the address to criminal activity was the statement that, in the detective's two years of law enforcement experience, "firearm[s] are often kept at the residence as well as in vehicles." *Id.* at 1227–28. The affidavit did not specify that 321 E. Church was the defendant's residence or that there was any other connection between the location and the defendant or the suspected criminal activity. *Id.* at 1228. Nor did it explain why the officer thought the items to be seized would be located at the residence. *Id.* at 1230. We held that "good faith may exist when a *minimal* nexus between the place to be searched and the suspected criminal activity is established." *See id.* at 1231 (emphasis added). The affidavit at issue in *Gonzales*, however, provided no such nexus. *Id.* Though we acknowledged that firearms are often kept at a suspect's residence, there were no facts in the affidavit "establishing the residence belonged to or was otherwise linked to Mr. Gonzales." *Id.*; *see also United States v. Hove*, 848 F.2d 137, 139–40 (9th Cir. 1988) (good faith was lacking when supporting affidavit failed to provide any connection between residence to be searched and suspect).

In contrast to *Gonzales*, the affidavit here supplies the minimal nexus between the suspect and the place to be searched necessary for the good faith exception to apply.

Officers knew that Mr. Jimenez was romantically involved with Ms. Flores. Ms. Flores owned a black Neon, which was consistent with eyewitnesses' descriptions of the car used by the shooter, and it was parked in front of her house in the days following the shooting. Furthermore, a truck registered to 334 E. Bonney in Mr. Jimenez's name was also parked in front of the residence in the days following the shooting. The affidavit is not devoid of facts linking Mr. Jimenez to the place to be searched; therefore, we cannot consider the officers' reliance on the warrant to be "entirely unreasonable." *See Leon*, 468 U.S. at 923; *see also Nolan*, 199 F.3d at 1185 (good faith exception applied to search of defendant drug-dealer's house when affidavit stated that drug dealers sometimes maintain records and drugs in easily accessible locations).

## 2. Overbreadth of the Warrant

The Fourth Amendment mandates warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A warrant is sufficiently specific if it "enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Robertson*, 21 F.3d 1030, 1033 (10th Cir. 1994). "[A] warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005). "However, the Fourth Amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow." *Id.* Mr. Jimenez contends that the warrant's authorization to

search for "any firearms," was constitutionally overbroad because officers were specifically investigating a crime involving a handgun.

The affidavit underlying the search warrant indicates that several eyewitnesses to the crime could not identify the shooter or the type of gun he used. At the suppression hearing, however, Officer Roberts testified that at least one witness had indicated that the shooter used a handgun. He further stated that he suspected Mr. Jimenez, whom Officer Roberts knew had a prior felony conviction, of being a felon in possession of a firearm—in which case Mr. Jimenez's possession of "any firearm" would be evidence of the commission of a crime. The affidavit did not reveal that Mr. Jimenez had a prior felony conviction, however, and he therefore contends that as to the investigation of the battery, the warrant was overbroad.

We agree that the warrant was overbroad. Though there was probable cause to search for a handgun, the warrant authorized a search for "any firearms." *See United States v. Gardner*, 537 F.2d 861, 862 (6th Cir. 1976) (per curiam) (holding warrant was overbroad when probable cause existed to search for a pistol but warrant permitted search and seizure of "all firearms and ammunition"). Similarly, though probable cause existed that Mr. Jimenez was a felon in possession of a firearm, the affidavit underlying the search warrant made no mention of his status as a felon. Even so, we conclude that the good-faith exception applies to the officers' reliance on the warrant. *See Riccardi*, 405 F. 3d at 863 (applying good-faith exception to warrant that failed to meet the requirement of particularity). There is no suggestion here that Officer Roberts intentionally or recklessly

omitted from his affidavit that one eyewitness saw the shooter use a handgun.  The most that can be said is that he "omitted the information 'out of negligence or innocent mistake,' which is insufficient to overcome a finding of good faith."  *Gonzales*, 399 F.3d at 1229 (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).  Moreover, there is no suggestion that Officer Roberts intentionally or recklessly omitted from his affidavit Mr. Jimenez's status as a felon.  If the affidavit contained such information, then there would be probable cause to search for "any firearms" as authorized by the warrant.  *See United States v. Campbell*,  256 F.3d 381, 389 (6th Cir. 2001) (police investigating theft of specific firearms obtained warrant to search for "all firearms"; warrant was not overbroad because affidavit revealed that suspect was a felon); *United States v. Smith*, 62 Fed. App'x  419, 422 (3d Cir. 2003) (same).

### 3.  Scope of the Warrant

Finally, Mr. Jimenez argues the executing officers exceeded the scope of the warrant by seizing the firearms because the officers were investigating an alleged handgun crime.  There is no merit to this argument.  The scope of the warrant quite clearly was not limited to handguns.  We previously held that the good-faith exception applies to the officers' seizure of the firearms.[2]  For the foregoing reasons, we hold that

---

[2]Mr. Jimenez argues that the District Court's suppression of letters found during the search is inconsistent with the court's refusal to suppress the firearms.  He asserts that neither the firearms nor the letters are immediately apparent evidence of crime that can be seized under the plain view exception. To the contrary, unlike firearms in a felon's residence, letters do not immediately appear to be evidence of a crime.

the District Court properly denied Mr. Jimenez's motion to suppress.

B.  Sufficiency of the Evidence[3]

Mr. Jimenez argues that the evidence presented at trial was insufficient to support his conviction for unlawful possession of a firearm.[4]  We review the record de novo to determine whether, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt.  *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006).  In so doing, "[w]e consider both direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom, but do not weigh conflicting evidence or consider the credibility of witnesses." *Id.*

To convict Mr. Jimenez, the Government was required to prove beyond a reasonable doubt that: (1) Mr. Jimenez was previously convicted of a felony; (2) he thereafter knowingly possessed a firearm or ammunition; and (3) the possession was in or affecting interstate commerce.  *United States v. Colonna*, 360 F.3d 1169, 1178 (10th Cir. 2004); 18 U.S.C. § 922(g)(1).  Mr. Jimenez challenges only the second element on appeal, arguing that the Government failed to prove he possessed the firearms.

---

[3]We address Mr. Jimenez's sufficiency of the evidence argument prior to reviewing his contention that the District Court erred in instructing the jury on the elements of the crime because our discussion of the former is relevant to the latter.

[4]Although Mr. Jimenez suggests in a heading that he is also challenging the sufficiency of the evidence related to his conviction for possession of ammunition, he never makes any argument or relates any facts on that issue.  Accordingly, we will not address that issue here.

Possession under § 922(g)(1) can be either actual or constructive. *United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994). A defendant has constructive possession of an object when he "knowingly holds the power to exercise control or dominion over it." *United States v. Lopez*, 372 F.3d 1207, 1211 (10th Cir. 2004) (alteration and citation omitted). When a defendant has exclusive possession of the place where the object is found, then knowledge, dominion, and control over the object may be inferred. *United States v. Michel*, 446 F. 3d 1122, 1128 (10th Cir. 2006). When two or more people occupy a given space, however, the government must present additional evidence "to show some connection or nexus between the defendant and the firearm or contraband." *Mills*, 29 F.3d at 549. We will uphold a conviction based on constructive possession in a joint occupancy situation when there is "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." *Id.* at 550 (citation omitted). Finally, the government need not show intention to exercise that dominion or control, "nor is it necessary to show that the defendant actually owned the weapons—mere possession is enough." *Colonna*, 360 F.3d at 1179.

First, the jury could properly conclude that Mr. Jimenez was a joint occupant at the E. Bonney address on February 10, 2003. When officers executed the search warrant, they found men's clothing and shoes in the master bedroom closet. Among the clothing was a sweatshirt with Mr. Jimenez's nickname, "Chills," on it. They also found a box with the initial "M." and the words "Jimenez" and "Chills" appearing on the outside of the box. After being arrested, an officer asked Mr. Jimenez for his address; he said it was

334 E. Bonney. Both Michelle and Gilbert Flores testified that Mr. Jimenez was residing with them at 334 E. Bonney on February 10. Furthermore, beginning in 2001, Mr. Jimenez consistently reported his residence as 334 E. Bonney to his probation officer, and she made weekly visits to that address over the course of the following year.

Moreover, there is sufficient evidence in the record on appeal to support the conclusion that Mr. Jimenez had knowledge of and access to firearms. The evidence shows that Mr. Jimenez had knowledge of the firearms in the gun safe and in the closet. During Mr. Jimenez's interview at the police station, an officer told Mr. Jimenez, "You've got a lot of guns in your house." Mr. Jimenez responded that "[t]hose are my kid's guns . . . ." His statement that the firearms belonged to someone else evidences his knowledge of their presence. *See Colonna*, 360 F.3d at 1179 (finding knowledge where defendant told officers the guns in his bedroom belonged to his wife). The jury could also reasonably conclude that Mr. Jimenez had specific knowledge that guns were stored in a closet and not in the gun safe. During the same interview Mr. Jimenez said he "found [some guns] up in the closet" and told Gilbert that the guns had to be in the gun safe. The closet Mr. Jimenez described was the closet where officers found the Winchester M200 shotgun.

Mr. Jimenez also had access to at least the Winchester M200 and .410 gauge shotguns.[5] With respect to the Winchester M200, Mr. Jimenez acknowledged that the

---

[5]Count one of the indictment charged Mr. Jimenez with possession of ten different firearms. To convict, the jury did not need to find that Mr. Jimenez possessed all of the

closet in which it was found was "my closet . . . where my heater's at." When asked whether police would find his fingerprints on any of the guns, Mr. Jimenez responded, "I hope not. I have—I do put some away; you know what I mean?" With respect to the .410 gauge shotgun, although Gilbert testified that he was a hunter, that he owned all of the guns and the gun safe, and that he only removed the .410 gauge shotgun from the gun safe temporarily, the jury was entitled to disbelieve his testimony. *See United States v. Waldroop*, 431 F.3d 736, 742 (10th Cir. 2005) (noting issues of witness credibility are delegated exclusively to the jury). Moreover, as noted above, that another person owned the guns does not establish that a defendant did not possess the guns. *See Colonna*, 360 F.3d at 1179 (government need not show the defendant owned the prohibited item; possession is enough). Thus, the jury could reasonably infer that Mr. Jimenez had knowledge of and access to, at a minimum, the Winchester M200 shotgun and .410 gauge shotgun.

Mr. Jimenez's reliance on *Mills*, 29 F.3d 545, to direct a finding of insufficient evidence is misplaced. In *Mills*, although the government presented evidence that the defendant had dominion and control over the dining room where firearms were found, it failed to establish the defendant *knew* the firearms were hidden within a compartment of the dining room table. *Id.* at 550. Here, the guns were not hidden, and there is no

---

firearms, so long as the Government proved beyond a reasonable doubt that he possessed one of them. The District Court instructed the jury that to convict, the jurors must agree unanimously on which firearm he possessed. The jury was not required to specify in its verdict which firearms it specifically found Mr. Jimenez to have possessed.

- 15 -

question that Mr. Jimenez was aware of their presence. All that is required to uphold the jury's verdict is "some evidence to support at least a plausible inference" that Mr. Jimenez had knowledge of and access to the weapons and ammunition. *Id.* at 549. There is more than sufficient evidence in the record on this point, and accordingly, we will not disturb the jury's verdict.

C.  Jury Instructions

At trial, Mr. Jimenez objected to Jury Instruction 17, an instruction related to the issue of constructive possession. Jury Instruction 17 states:

> In order to sustain a conviction based upon constructive possession, the government must present evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband.
> The government need not prove that the defendant had the intention to exercise dominion and control. Where the defendant in a joint occupancy situation had knowledge of and access to the weapons, there is sufficient nexus to infer dominion and control.

Mr. Jimenez argued to the District Court that the instruction, which was derived from this Court's opinion in *Colonna*, 360 F.3d at 1179, is necessarily limited to the specific facts of *Colonna*. In that case, the defendant was charged with constructive possession of firearms and ammunition police officers found inside the top dresser drawer in a bedroom the defendant shared with his wife. Because these were not the facts of his case, Mr. Jimenez argued, the instruction did not apply. The District Court overruled his objection, explaining that *Colonna*'s knowledge and access rule for constructive possession in joint occupancy cases is not fact-specific and represents the law of the Circuit. Mr. Jimenez

renews this objection on appeal and raises other arguments related to Jury Instruction 17.

When a specific objection was made at trial, we examine the jury instructions as a whole and "review de novo the propriety of an individual jury instruction." *United States v. Al-Rekabi*, 454 F.3d 1113, 1119 (10th Cir. 2006). "If an instructional error occurred, we must determine whether the conviction must be set aside because the error had a substantial influence on the outcome of the trial or leaves us in grave doubt as to its influence on the verdict. If the error is harmless the conviction will stand." *Id.* (quotation omitted). When the defendant fails to make a specific objection to a jury instruction, however, our review is for plain error. *United States v. Bornfield*, 145 F.3d 1123, 1129 (10th Cir. 1998); *see also* Fed. R. Crim. P. 30(d) (requiring a party to specify the grounds for an objection to a jury instruction; failure to do so precludes appellate review, "except as permitted under Rule 52(b)").

As to Mr. Jimenez's contention that application of the *Colonna* standard must be limited to the specific facts of that case, we disagree. As the District Court noted, nothing in *Colonna* suggests that its discussion of joint occupancy and constructive possession was fact-specific. We said that "[i]n cases of joint occupancy, where the government seeks to prove constructive possession by circumstantial evidence, it must present evidence to show some connection or nexus between the defendant and the firearm or other contraband," including "evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." *Colonna*, 360 F.3d at 1179 (quotation omitted). There was sufficient evidence of the defendant's

knowledge of the firearms because he volunteered that he knew where they were and that they were his wife's and not his. There was sufficient evidence of the defendant's access to the firearms because they were inside his bedside dresser. Nothing in our discussion suggests that a constructive possession instruction is only proper if contraband is found in the defendant's bedroom.

In addition to the foregoing, Mr. Jimenez raises two arguments regarding Jury Instruction 17 for the first time on appeal. He argues that the instruction (1) misstated the law of constructive possession because it said that the Government need not prove that the defendant had the *intention* to exercise dominion and control over the prohibited object, and (2) lowered the Government's burden of proof from "beyond a reasonable doubt" to require that the government prove only a "plausible inference" that the defendant had knowledge of and access to the prohibited objects. Because these objections were made for the first time on appeal, we review them only for plain error and find that there was none.

On plain-error review we will reverse the judgment below only if "there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). An error is "plain" if it is "clear or obvious at the time of appeal." *Id.* at 732. To establish that a plain error affected the defendant's substantial rights, the defendant must show a "reasonable probability that, but for the error claimed, the result of the proceeding would have been

different." *United States v. Dominguez Benitez*, 542 U.S. 74, 75 (2004) (alteration and quotation omitted). The defendant bears the burden of making this showing. *United States v. Vonn*, 535 U.S. 55, 62–63 (2002).

First, Mr. Jimenez argues that to prove constructive possession, the Government must establish that the defendant intended to exercise dominion and control over the illegal object. Therefore, according to Mr. Jimenez, because Jury Instruction 17 provided that the Government need not make such a showing, it was given in error. We squarely rejected this argument in *Colonna*, where we held that in a joint occupancy situation, "[i]t is not necessary to show that the defendant intended to exercise that dominion or control, nor is it necessary to show that the defendant actually owned the weapons—mere possession is enough." 360 F.3d at 1179.

Nevertheless, Mr. Jimenez points out that Jury Instruction 16 contradicted Jury Instruction 17 on this point. The former instruction provided that, "[a] person who . . . knowingly has both the power and *the intention* . . . to exercise dominion or control over a thing . . . is then in constructive possession of it." (emphasis added). The conflicting statements, Mr. Jimenez argues, confused the jury. Although we question whether this instruction was given in error, any confusion on the part of the jurors would only have weighed in favor of Mr. Jimenez because it would have caused the jurors to believe they could not convict unless the Government had established Mr. Jimenez's intent to exercise dominion and control over the firearms. Mr. Jimenez has therefore failed to establish that his substantial rights were affected by an error in the instructions. *See United States v.*

- 19 -

*Arlington*, 309 F.3d 40, 48 (D.C. Cir. 2002) (an error in the jury instructions that favors the defendant does not affect substantial rights).

Mr. Jimenez also argues that the District Court impermissibly lessened the Government's burden to prove his guilt beyond a reasonable doubt by including the "plausible inference" language in Jury Instruction 17. Jury Instruction 17 states, in part, that "[i]n order to sustain a conviction based upon constructive possession, the government must present evidence supporting at least a *plausible inference* that the defendant had knowledge of and access to the weapon or contraband." (emphasis added).

We agree with Mr. Jimenez that this instruction was given in error. As noted above, the instruction was based on language taken from this Court's opinion in *Colonna*. In that case, however, we were not reviewing the propriety of a jury instruction. Rather, we were reviewing whether there was sufficient evidence to support the defendant's conviction for constructive possession. *See Colonna*, 360 F.3d at 1178. "Evidence is sufficient if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Rockey*, 449 F.3d 1099, 1103 (10th Cir. 2006). We will sustain a conviction under this standard so long as the government has presented "evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon." *Colonna*, 360 F.3d at 1179 (internal quotation marks omitted). To import this standard into a jury instruction runs the risk of reducing the government's burden to prove constructive possession beyond a reasonable doubt by allowing the jury

to convict only if there is a "plausible inference" of constructive possession. We further conclude that this error was plain. *Colonna* unambiguously applies an appellate standard to review the defendant's sufficiency-of-the-evidence claim; such a standard of review is not appropriate language in a jury instruction.

Nevertheless, we conclude that reversal is inappropriate because the error did not affect Mr. Jimenez's substantial rights, as required by the third prong of plain-error review. Jury instructions are prejudicial if they raise a substantial doubt that the jury was fairly guided. *United States v. Bailey*, 327 F.3d 1131, 1143 (10th Cir. 2003). As noted above, we review jury instructions as a whole to determine whether they accurately informed the jury of the governing law. *Dowlin*, 408 F.3d at 664. Overall, the jury instructions adequately directed the jury to the applicable burden of proof. The District Court informed the jury in nine separate jury instructions that to convict, it must find Mr. Jimenez guilty "beyond a reasonable doubt." Jury Instructions 13, 14 and 18, for example, instructed the jurors that, to find Mr. Jimenez guilty, they must find that the Government proved each element of the charge, including the element of possession, beyond a reasonable doubt. Jury Instruction 16 provided that the jurors may find the element of possession "if you find beyond a reasonable doubt that the defendant had actual or constructive possession." Jury Instruction 18 also provided that "[m]ere presence of the defendant around the firearms or ammunition is not enough to find the defendant guilty of the substantive offense." Taken as a whole, we have no substantial doubts that the jury was fairly guided by the jury instructions. *See Dowlin*, 408 F.3d at

666–67 (holding no plain error where defendant argued language lowered government's burden of proof, but instructions overall adequately directed jury to the beyond a reasonable doubt standard).

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge