**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 9, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JONATHAN TONY SANCHEZ,

Defendant - Appellant.

No. 23-2037
(D.C. No. 1:22-CR-00115-DHU-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **SEYMOUR**, and **BALDOCK**, Circuit Judges.
_____

In September 2022, Jonathan Tony Sanchez was convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924. The firearm at issue belonged to his girlfriend, Guadalupe Flores, and was found in a small, open purse on the kitchen table of Ms. Flores's apartment. Mr. Sanchez was in the apartment at the time the firearm was discovered, and his DNA comprised 14% of a DNA mixture swabbed from the firearm.

Mr. Sanchez now appeals from his conviction, arguing that the evidence was insufficient to prove that he actually or constructively possessed the firearm on or

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

about the indictment date.  For the reasons herein, we conclude that the evidence was sufficient to uphold Mr. Sanchez's conviction under a constructive possession theory.

In particular, a reasonable jury could conclude beyond a reasonable doubt that Mr. Sanchez had knowledge of, access to, and an intent to exercise dominion or control over the firearm on or about the indictment date given the evidence presented at trial, including that: (1) Mr. Sanchez's DNA was found on the firearm; (2) testimony from the FBI forensic examiner suggested that it was likely Mr. Sanchez handled, and not merely touched, the firearm; (3) there was circumstantial evidence that the gun was haphazardly placed—suggesting that someone intended to hide it; and (4) the gun was loaded.

Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** Mr. Sanchez's conviction.

## I

### *Events Leading to Mr. Sanchez's Arrest*

On March 10, 2021, police went to the apartment complex of Mr. Sanchez's girlfriend, Guadalupe Flores—where Mr. Sanchez had recently been surveilled frequenting—to execute an arrest warrant on Mr. Sanchez for an unrelated charge.

The officers knocked and announced their presence, advised that they were there pursuant to a warrant, and directed the occupants of the apartment to come outside with their hands up.  No one immediately answered the door.

While the officers were waiting for the occupants to come outside, they observed movement on the first floor of the apartment.  Specifically, Officer Standley

testified that "[t]hrough the kitchen window, through the slits in the blinds, I could see what appeared to be movement, somebody inside moving." R., Vol. III, at 80 (Trial Tr., dated Sept. 27–29, 2022). Officer Nagel testified:

> There was light coming through the peephole. Shortly after I knocked and announced, that peephole went dark as if somebody was behind it. And then when I announced that I saw movement behind the peephole, the light appeared through as [if] somebody had moved away from it. . . . [T]here was noise that appeared to be coming from inside.

*Id.* at 114. And Officer Gregory testified that he "observed some movement in the downstairs window," such as "[a] silhouette of bodies or a body moving around in a downstairs area," although the window was "covered with a blind." *Id.* at 132.

After about three minutes, the officers opened the apartment door. Ms. Flores was the first to exit the apartment. The officers learned from her that Mr. Sanchez (and others) were in the apartment, and that there was a firearm in the apartment. An officer made a limited entry into the apartment to retrieve the firearm. The firearm was located in an open, small hand purse on the kitchen table near the front door. The barrel of the firearm in the open purse was visible to the officer.

About fifteen minutes later, Mr. Sanchez appeared at the top of the stairs with Ms. Flores's three-year-old daughter. After some negotiation, the officers got Mr. Sanchez to let the three-year-old come out of the house, and then to submit to custody himself. The officers then cleared the house, finding another adult male inside.

*Admission and DNA Test*

On March 12, 2021, FBI Special Agent Acee visited Mr. Sanchez at the Metropolitan Detention Center. Agent Acee informed Mr. Sanchez that a firearm had been recovered from Ms. Flores's apartment. Mr. Sanchez "indicate[d]" that Ms. Flores "was the owner of the firearm." *Id.* at 187. Mr. Sanchez also "indicate[d]" that "his DNA or fingerprints might be on the firearm but not the ammunition." *Id.* at 188.

On June 13, 2021, Agent Acee obtained a warrant for Mr. Sanchez's DNA. A biologist in the FBI's DNA Casework Unit performed a DNA test, whereby she swabbed multiple areas of the firearm that were most likely to retain DNA evidence—and were most likely to have been handled—and submitted the swab for testing. The DNA from the firearm came back as originating from three people. Eighty-four percent of the DNA came from a female, fourteen percent matched Mr. Sanchez's DNA, and two percent represented a third individual.

Agent Acee visited Mr. Sanchez again in November 2021 and informed him of the DNA test results. According to Agent Acee, Mr. Sanchez "didn't seem surprised" to hear that his DNA had been found on the firearm. *Id.* at 194.

*Indictment, Trial, and Motion for Judgment of Acquittal*

On January 25, 2022, a federal grand jury returned an indictment charging Mr. Sanchez with one count of being a felon in possession of a firearm on or about March 10, 2021, in violation of 18 U.S.C. §§ 922(g)(1) and 924.

Beginning on September 27, 2022, Mr. Sanchez's case proceeded to a three-day jury trial. Ms. Gregor, a forensic examiner in the FBI's DNA Casework Unit, testified about the DNA results. She testified that the DNA test "concentrat[ed] on handler DNA"—DNA that is primarily found "on the areas where a person may have handled the item"—rather than "touch DNA," whereby someone may briefly touch an item for a couple of seconds (which often results in "no DNA profile or a very low level DNA profile"). *Id.* at 172. But, on cross examination, she admitted that there was no way to tell which of the swabbed areas of the gun Mr. Sanchez's DNA came from; whether he touched the pistol or if his DNA was transferred onto the pistol by a third party; or when his DNA got on the pistol.

At the close of the government's case, Mr. Sanchez moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). The district court reserved ruling on the motion. Mr. Sanchez then called one witness, Mr. Taylor, a forensic scientist, who testified about "transfer DNA"[1] and stated that "nobody in this

---

[1]     As Mr. Taylor testified, transfer DNA is "a mechanism by which DNA can transfer to an item that somebody had not directly come in contact with," for example if someone "sneeze[s] in [their] hand, shake[s] hands with [a] juror, the juror opens the door knob, and their DNA, the person who sneezed, gets on the doorknob, and they've never touched it." R., Vol. III, at 225.

field can say how the DNA got on that gun or when it got on the gun." *Id.* at 227. At the close of the evidence, the court denied Mr. Sanchez's motion, although it stated that "this was a closer call than [] expected." *Id.* at 307. The jury then found Mr. Sanchez guilty as charged.

On October 6, 2022, Mr. Sanchez filed another motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c)(1). He argued that there was insufficient evidence presented at trial from which the jury could conclude beyond a reasonable doubt that Mr. Sanchez was in actual or constructive possession of the firearm. The government opposed the motion.

On November 22, 2022, the district court denied the motion. Construing the evidence in the light most favorable to the government, the court found that the government had presented sufficient evidence to allow the jury to conclude that Mr. Sanchez knowingly possessed the firearm. In particular: (1) Mr. Sanchez's DNA was on the firearm; (2) Mr. Sanchez acknowledged that his DNA might be on the firearm; (3) Mr. Sanchez did not seem surprised when informed of the DNA results; (4) Mr. Sanchez's DNA was found on portions of the firearm that were pertinent to operating the firearm; and (5) there was a round of ammunition in the chamber of the firearm, meaning that somebody had touched the pertinent parts of the firearm to load a round into the chamber.

Further, the government had presented the following evidence supporting constructive possession: (1) that nobody answered the door after investigators knocked and announced their presence; (2) that there was visible movement to and

6

from the kitchen area where the firearm was located; (3) that the firearm was placed in the purse in a haphazard manner; (4) that Ms. Flores did not have a concealed carry license, and the firearm took up the majority of the space in the purse; (5) that the firearm and the purse were on a table that was accessible to all occupants of the apartment; (6) that none of the apartment's occupants were downstairs when investigators entered; and (7) that Mr. Sanchez admitted he knew the firearm belonged to Ms. Flores, so he was aware of its existence and its presence in the apartment.

Given this evidence, the district court held that:

> [A] reasonable jury could have concluded that when officers announced their presence, the Defendant placed the firearm in his girlfriend's purse before going upstairs. A reasonable jury could have also found that the DNA on the firearm was from the Defendant's handling of that firearm rather than his girlfriend transferring the DNA. Regardless of whether the jury found the possession to be actual or constructive, the evidence presented by the Government was sufficient for a reasonable jury to determine that Defendant possessed the firearm.

R., Vol. I, at 87 (Order Den. Mot. J. Acquittal, filed Nov. 22, 2022).

*Sentencing and Appeal*

On March 15, 2023, the district court sentenced Mr. Sanchez to 20 months' imprisonment, with three years of supervised release to follow. Final judgment was entered on March 20, 2023. Mr. Sanchez timely filed his Notice of Appeal on March 20, 2023.

7

## II

Mr. Sanchez was convicted of being a felon in possession of a firearm and ammunition under 18 U.S.C. § 922(g)(1).  That charge requires the government to prove four elements:

1.  that the defendant knowingly possessed a firearm or ammunition;

2.  that the defendant was convicted of a felony before he possessed the firearm or ammunition;

3.  that the defendant knew he was a felon; and

4.  that, before the defendant possessed the firearm or ammunition, the firearm or ammunition had traveled in interstate commerce.

*See, e.g.*, R., Vol. I, at 54 (Jury Instrs., filed Sept. 29, 2022).  At trial, Mr. Sanchez stipulated to the second through fourth elements; accordingly, whether Mr. Sanchez knowingly possessed a firearm or ammunition was the only element at issue.

"Possession may be actual or constructive."  *United States v. Stepp*, 89 F.4th 826, 832 (10th Cir. 2023).  And possession "may be proved by circumstantial or direct evidence."  *Id.* (quoting *United States v. Johnson*, 46 F.4th 1183, 1187 (10th Cir. 2022)).  "When an indictment lists a specific date, the government must produce 'some evidence which tends to show that the defendant committed the charged offense on "a date reasonably near to the specified date" alleged in the indictment.'" *United States v. Ellis*, 868 F.3d 1155, 1179 (10th Cir. 2017) (quoting *United States v. Charley*, 189 F.3d 1251, 1273 (10th Cir. 1999)).  "Evidence that a defendant committed the crime within a few weeks of the specified date suffices."  *Id.*

8

"Actual possession occurs where 'a person has direct physical control over a firearm at a given time.'" *United States v. Samora*, 954 F.3d 1286, 1290 (10th Cir. 2020) (quoting *United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007), *abrogated by United States v. Little*, 829 F.3d 1177 (10th Cir. 2016)). "Thus, to convict on actual possession, the defendant must have held the firearm 'for a mere second or two' during the time specified in the indictment." *Id.* (quoting *United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999), *overruled on other grounds by Chambers v. United States*, 555 U.S. 122 (2009)).

"[C]onstructive possession exists when a person[,] not in actual possession[,] knowingly has the power and intent at a given time to exercise dominion or control over an object." *Stepp*, 89 F.4th at 832 (alterations in original) (quoting *Little*, 829 F.3d at 1182). "When a defendant has exclusive control over the premises where an object is found, 'a jury may infer constructive possession.'" *Id.* (quoting *Little*, 829 F.3d at 1183). "But when a defendant jointly occupies the premises, the Government must 'show a nexus between the defendant and the firearm [or ammunition].'" *Id.* (alteration in original) (quoting *United States v. Benford*, 875 F.3d 1007, 1015 (10th Cir. 2017)). "That is, the [G]overnment must demonstrate the defendant knew of, had access to, and intended to exercise dominion or control over the contraband." *Id.* (alteration in original) (quoting *Johnson*, 46 F.4th at 1187).[2] "Multiple individuals

---

[2]    In 2015, the Supreme Court decided *Henderson v. United States*, 575 U.S. 622 (2015), which clarified that an intent to exercise dominion and control over the contraband is a necessary component of constructive possession. *See id.* at 626. And in *United States v. Little*, 829 F.3d 1177 (10th Cir. 2016), we recognized that

may have constructive possession of the contraband; exclusive possession is not required." *Id.* at 833. "But the defendant's 'joint occupancy alone' cannot sustain an inference of constructive possession." *Id.* (quoting *United States v. Hishaw*, 235 F.3d 565, 571 (10th Cir. 2000)).

## III

In raising his insufficiency-of-the-evidence challenge, Mr. Sanchez is "faced with a high hurdle[,]" in that "this court must review the record de novo 'and ask only whether, taking the evidence—"both direct and circumstantial, together with the reasonable inferences to be drawn therefrom"—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" *United States v. Voss*, 82 F.3d 1521, 1524–25 (10th Cir. 1996) (quoting *United States v. Urena*, 27 F.3d 1487, 1489 (10th Cir. 1994)).

Mr. Sanchez cannot clear this hurdle. Specifically, the evidence presented at trial was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Mr. Sanchez had knowledge of, access to, and an intent to exercise dominion or control over the firearm on or about March 10, 2021. Therefore, we affirm Mr. Sanchez's conviction because a reasonable jury could have found him guilty beyond a reasonable doubt under a constructive possession theory. We accordingly need not

---

*Henderson* abrogated our prior precedents and made clear that intent is a requisite showing for constructive possession under § 922(g)(1). *See id.* at 1182. Thus, our precedents prior to *Little* and *Henderson* do not necessarily capture all of the elements that are necessary for a conviction in this case, although they can still be instructive on certain matters.

reach the question of whether the evidence was sufficient for a reasonable jury to conclude that Mr. Sanchez was in actual possession of the firearm on or about March 10, 2021.

### A

The evidence presented at trial was sufficient to prove that Mr. Sanchez had knowledge of the firearm on or about March 10, 2021.

Specifically, Agent Acee testified that, during his interview with Mr. Sanchez, Mr. Sanchez indicated to Agent Acee that he knew Ms. Flores was the owner of the firearm. He also stated that his DNA or fingerprints might be on the firearm. Indeed, Mr. Sanchez's DNA was thereafter found on the firearm, to which Agent Acee testified Mr. Sanchez "didn't seem surprised." R., Vol. III, at 194.

This is sufficient evidence to show that Mr. Sanchez had knowledge of the firearm on or about March 10, 2021. Evidence of prior use of the firearm—*viz*., the DNA on the firearm—can show the requisite knowledge. *See Benford*, 875 F.3d at 1016; *see also Samora*, 954 F.3d at 1291–92 (concluding that DNA evidence showing that the defendant handled the firearm supported a "plausible inference that the defendant had knowledge of and access to the weapon or contraband" (quoting *Hishaw*, 235 F.3d at 571)). Further, the fact that Mr. Sanchez did not seem surprised that his DNA was found on the firearm can go to his knowledge of the firearm. *See Benford*, 875 F.3d at 1016 ("[Mr.] Benford's own words help prove that he knew the pistol was in the apartment. When told that police had found the pistol, [Mr.] Benford was unfazed, telling the officer, 'I guess I'll have to take the charge.'").

Lastly, Mr. Sanchez's statement regarding the ownership of the firearm indicates his knowledge. *See United States v. Jimenez*, 205 F. App'x 656, 663–64 (10th Cir. 2006) ("During Mr. Jimenez's interview at the police station, an officer told Mr. Jimenez, 'You've got a lot of guns in your house.'  Mr. Jimenez responded that '[t]hose are my kid's guns . . . .'  His statement that the firearms belonged to someone else evidences his knowledge of their presence." (alteration and omission in original)).[3]

Therefore, a reasonable jury could conclude beyond a reasonable doubt that Mr. Sanchez had knowledge of the firearm on or about March 10, 2021.

**B**

The evidence presented at trial was sufficient to prove that Mr. Sanchez had access to the firearm on or about March 10, 2021.

It is true that the firearm was found in Ms. Flores's purse—a fact that Mr. Sanchez relies heavily on in his briefing. *See* Aplt.'s Opening Br. at 19 ("The analysis must begin with where the gun was found.  It was found in Ms. Flores's purse, a place uniquely associated with her.  It was not a place to which Mr. Sanchez could be thought to have any connection.").  But the purse was located in a common area—on the kitchen table—and was open enough for the officer to see the barrel of the gun.  Further, Mr. Sanchez's DNA was found on the firearm, indicating that he had accessed the firearm in the past.  *See Samora*, 954 F.3d at 1291–92; *see also*

---

[3]    We cite unpublished cases for their persuasive value only and do not treat them as binding authority.  *See United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022).

*United States v. Ramon*, No. 22-1249, 2023 WL 6939693, at *6 (10th Cir. Oct. 20, 2023) (unpublished).

We have held that when contraband is found in a common area, the access element of constructive possession is satisfied. *See, e.g., Benford*, 875 F.3d at 1015 (concluding that a defendant had access to a firearm when it was located in an open bag in a bedroom that he shared with his girlfriend); *United States v. Roach*, 582 F.3d 1192, 1205 (10th Cir. 2009) (concluding that a defendant had access to contraband when contraband was found in the kitchen and a closet of a jointly occupied residence); *Jimenez*, 205 F. App'x at 658, 664 (concluding that a defendant had access to a shotgun that was found on top of a plastic cart in the dining room of the home where the defendant was a joint occupant); *see also United States v. Gambino-Zavala*, 539 F.3d 1221, 1230 (10th Cir. 2008) (finding that, for purposes of concluding that there was sufficient evidence of constructive possession to impose a sentencing enhancement, a defendant had knowledge of and access to drugs when "the drugs were located in an area of the apartment that a joint occupant would regularly access—a kitchen cabinet"); *United States v. Lujan*, No. 21-2107, 2022 WL 1679254, at *5 (10th Cir. May 26, 2022) (unpublished) ("The heroin and alcohol were found in common areas of the trailer that a joint resident would regularly access, [] supporting at least an inference of access.").

Further, even when contraband is found in someone else's private space, if that area is not cordoned off, the access element may be satisfied. *See Ramon*, 2023 WL 6939693, at *6 (concluding that Mr. Ramon had access to a firearm found in his

13

mother's closet because the doors to the rooms in the house were always open; his mother's closet did not have a door; and Mr. Ramon's DNA was found on the firearm); *cf. United States v. King*, 632 F.3d 646, 653 (10th Cir. 2011) (concluding that Mr. King had the ability to exercise dominion or control over a rifle located in his intimate partner's vehicle because "Mr. King could have accessed the rifle in the trunk at any time simply by asking [his intimate partner] for the key").

Therefore, even though the firearm was found in Ms. Flores's purse, the evidence was sufficient to prove that Mr. Sanchez had access to it on or about March 10, 2021, because the purse was found in a common area; it was not sealed or locked and, indeed, was open such that items could be placed in, or removed from, it; and Mr. Sanchez had accessed the firearm previously.

## C

Lastly, the evidence presented at trial was sufficient to prove that Mr. Sanchez intended to exercise dominion or control over the firearm on or about March 10, 2021.

Mr. Sanchez relies primarily on two cases to argue that the evidence was insufficient to show constructive possession: *United States v. Samora*, 954 F.3d 1286 (10th Cir. 2020), and *United States v. Ramon*, No. 22-1249, 2023 WL 6939693 (10th Cir. Oct. 20, 2023) (unpublished). In *Samora*, we rejected the defendant's insufficiency-of-the-evidence claim because a reasonable jury could have found that the defendant constructively possessed the firearm. *See* 954 F.3d at 1290. The facts of the case were as follows: Mr. Samora was arrested on an outstanding warrant as he

was leaving a restaurant. *See id.* at 1289. He had borrowed his ex-girlfriend's car to drive to the restaurant. *See id.* After the officers arrested Mr. Samora, they searched the vehicle and found a loaded firearm inside the center console. *See id.* The government charged Mr. Samora with being a felon in possession of a firearm. *See id.* At trial, the government presented expert testimony that the firearm contained DNA from at least three individuals. *See id.* at 1291. But the DNA expert explained that Mr. Samora contributed the most DNA to the firearm, making his DNA the "major profile" on the gun. *Id.* Because Mr. Samora's DNA matched the major profile on the firearm, the DNA expert concluded that he likely handled the gun at some point. *See id.*

This Court concluded that, "while the evidence [wa]s far from overwhelming," "[t]he DNA combined with [Mr. Samora's] proximity to the firearm—as he was the sole occupant of the vehicle on the day the firearm was found in the center console—[wa]s sufficient to establish [his] constructive possession of the firearm." *Id.* at 1292. In particular, "the evidence showed [Mr. Samora] handled the specific firearm at issue, and because [Mr. Samora's] DNA matched the major profile on the firearm, it is reasonable for the jury to infer [Mr. Samora] handled the firearm more recently than two years ago."[4] *Id.*

In *Ramon*, after Mr. Ramon repeatedly violated conditions of his supervised release, parole officers searched the home he shared with his mother. *See Ramon*,

---

[4] Our reference to "more recently than two years ago" was intended as a distinguishing factor from *Hishaw*, 235 F.3d 565, a case relied upon by Mr. Samora.

15

2023 WL 6939693, at *1. Officers discovered a loaded handgun in his mother's closet, and Mr. Ramon was convicted of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). *Id.* At trial, the government presented the following evidence: (1) that Mr. Ramon's DNA was found on the gun, and there was no evidence that Mr. Ramon's mother's DNA was on the gun; (2) that the doors to the rooms in the house were always kept open, and that Mr. Ramon's mother's closet did not have a door; (3) that Mr. Ramon's mother, given her height, probably could not reach the gun without help, while Mr. Ramon, by contrast, could reach the firearm while standing; (4) the gun was loaded; and (5) Mr. Ramon went on a "verbal tirade" during the search to attempt to get the officers to stop the search. *See id.* at *6–7. A panel of this court "conclude[d] that the loaded firearm, the DNA evidence, and Mr. Ramon's behavior on the day of the search logically and circumstantially support[ed] a plausible inference that Mr. Ramon exercised dominion and control over the weapon" on the date of the search. *Id.* at *7.

Mr. Sanchez's argument relies on distinguishing *Samora* and *Ramon* from the facts of this case. Primarily, Mr. Sanchez notes that, in contrast to Mr. Samora and Mr. Ramon, Mr. Sanchez's DNA was not the "major" or sole DNA profile on the firearm. Aplt.'s Opening Br. at 20. Secondarily, "in both of those cases, this court relied as well on proof of proximity and/or access to the gun in holding the proof sufficient." *Id.* Mr. Sanchez is correct in those regards. Mr. Sanchez's DNA was "14 percent" of the DNA mixture, while "[the] major DNA profile . . . [was] 84 percent." R., Vol. III, at 171. Mr. Sanchez was also a joint—not sole—occupant of

16

the apartment at the time the firearm was found, and he was upstairs when the officers entered the apartment—i.e., nowhere near the kitchen where the purse containing the firearm was located. The other adult occupants of Ms. Flores's apartment also had equal access to the firearm (unlike Mr. Ramon's mother who probably could not reach it in the closet), and there was no evidence presented of a "verbal tirade" or other attempt of Mr. Sanchez to obstruct the search. Yet, even with these distinguishing factors, our precedent indicates that a reasonable jury could still find that Mr. Sanchez intended to exercise dominion or control over the firearm on or about March 10, 2021.

First, "while evidence that the defendant actually handled a firearm outside the indictment period does not suffice to show actual possession, it may provide circumstantial evidence of the ability and intent to exercise control over the firearm necessary to establish constructive possession." *Benford*, 875 F.3d at 1020–21; *accord Samora*, 954 F.3d at 1292 (concluding that DNA evidence showing that a firearm was previously handled established a nexus between Mr. Samora and the firearm). *But cf. Hishaw*, 235 F.3d at 573 (concluding that evidence that Mr. Hishaw was observed with "some kind of firearm" two years before the charged § 922(g)(1) offense was insufficient to prove that he constructively possessed a semiautomatic pistol found in the car he was driving two years later); *United States v. Taylor*, 113 F.3d 1136, 1145 (10th Cir. 1997) (concluding that a government witness's testimony that she had seen Mr. Taylor with a "small handgun on one or two occasions" was insufficient evidence of constructive possession because it was unclear when the

witness had actually seen Mr. Taylor with the handgun and because the handgun the witness described was different from the firearm that Mr. Taylor was charged with possessing).

Here, although it is true that Mr. Sanchez's DNA was a minor profile on the firearm, the FBI forensic examiner testified that the examination of the firearm focused on handler DNA rather than touch DNA. *See* R., Vol. III, at 172 ("[T]ouch DNA is essentially where an individual is going to take their finger, and, you know, touch their desk and leave behind their DNA on the desk. But, most likely, touch DNA results in no DNA profile or a very low level DNA profile, which means that there's not going to be information at every single location that I'm looking at, which is different to what this case was, where, for a pistol, I'm concentrating on handler DNA. And handler DNA is concentrating on the areas where a person may have handled the item."); *see also* Aplee.'s Resp. Br. at 9 ("The government's DNA expert testified that the DNA was indicative of [Mr.] Sanchez having handled the firearm."). From this testimony, a jury could reasonably conclude that Mr. Sanchez had handled this specific firearm at some date—a point that Mr. Sanchez seems to concede. *See* Aplt.'s Opening Br. at 19 ("This [DNA] evidence allowed for the inference that Mr. Sanchez had handled the gun at some point.").

In *Samora*, the reason that this court focused on the fact that Mr. Samora's DNA was the major profile on the firearm was because this indicated that Mr. Samora had "handled the specific firearm at issue." 954 F.3d at 1292. *Samora* did not say, however, that it was *necessary* for the DNA evidence to reveal a major

18

profile for a reasonable jury to draw such an inference.  Furthermore, unlike *Hishaw* and *Taylor*, the evidence here showed that Mr. Sanchez previously handled *this specific* firearm.  *See Samora*, 954 F.3d at 1292 ("The evidence in *Hishaw* showed the defendant handled firearms—not necessarily the firearm at issue—two years prior to the charged offense.  In this case, the evidence showed [Mr. Samora] handled the specific firearm at issue . . . ." (citation omitted)).

Viewing this evidence in the light most favorable to the government, a reasonable jury could conclude that evidence showing that Mr. Sanchez handled the firearm at issue indicates that Mr. Sanchez intended to exercise dominion or control over the firearm on or about March 10, 2021.  *See Benford*, 875 F.3d at 1020–21 ("[E]vidence that the defendant actually handled a firearm outside the indictment period . . . may provide circumstantial evidence of the ability and intent to exercise control over the firearm necessary to establish constructive possession."); *see also United States v. O'Connor*, 723 F. App'x 302, 305, 312–13 (6th Cir. 2018) (concluding that the evidence was sufficient to prove that Mr. O'Connor constructively possessed an assault rifle when, among other things, the firearm belonged to his girlfriend, but both of their DNA profiles were on the rifle, and the rifle was found in a jointly occupied location); *United States v. Cross*, 888 F.3d 985, 991 (8th Cir. 2018) (concluding that the evidence was sufficient to sustain Mr. Cross's conviction under § 922(g) when, among other indications of constructive possession, "a 'mixture' of at least three persons' DNA was found on the gun and

magazine" found in Mr. Cross's bedroom and "[Mr.] Cross was a likely source of the DNA, though possibly by transfer through an intermediary").

Second, similar to the firearms in *Samora* and *Ramon*, the firearm here was loaded at the time it was found. We have indicated that a loaded firearm generally suggests an intent to exercise control over it. *See Ramon*, 2023 WL 6939693, at *7 ("Regarding intent, the loaded firearm strongly suggests that Mr. Ramon intended to control it the day officers found it. A firearm 'ready to fire at the press of a trigger' generally compels the conclusion 'that someone had the intent to exercise control' over it." (emphasis omitted) (quoting *United States v. Veng Xiong*, 1 F.4th 848, 860 (10th Cir. 2021))); *United States v. Shannon*, 809 F. App'x 515, 520 (10th Cir. 2020) ("[S]ufficient evidence showed that Mr. Shannon not only had the ability 'to control' the firearm, but also the 'intent to exercise that control.' The AR-15 was loaded, with its safety switch off, indicating an intent to use the weapon if needed." (citation omitted) (quoting *Little*, 829 F.3d at 1182)); *see also Johnson*, 46 F.4th at 1190–91 ("Although there is no testimony Johnson previously had exclusive control over the Impala or the firearm, his actual contact with the loaded gun, possession of drugs for sale, and prior statement admitting to possessing a firearm to aid with drug sales would compel a properly instructed jury to find he constructively possessed the firearm."). A reasonable jury could therefore find that some occupant of the apartment—who kept or placed a loaded gun in the kitchen by the front door in an open container—intended to exercise dominion or control over it, and as noted, Mr. Sanchez knew about that firearm and had access to it.

Furthermore, Mr. Sanchez said that "his DNA or fingerprints might be on the firearm *but not the ammunition*." R., Vol. III, at 188. Given that there is no indication in Agent Acee's testimony that he informed Mr. Sanchez that the firearm was loaded, a reasonable jury could conclude that Mr. Sanchez in fact knew that the firearm was loaded—which further supports a conclusion that he intended to exercise dominion or control. And a reasonable jury might also consider that Mr. Sanchez's DNA came from the parts of the firearm must likely to be handled—including areas instrumental in loading ammunition.

Third, and lastly, the circumstantial evidence indicated that someone tried to hide the firearm when police arrived. Specifically: (1) when the officers knocked and announced their presence, no one immediately answered the door; (2) while the officers were waiting, they observed movement on the first floor of the apartment; (3) the firearm was found in a purse barely big enough to hold it, reasonably suggesting that it was not regularly kept there and instead had been placed there in a haphazard manner; and (4) Ms. Flores did not have a concealed carry permit, making it unlikely that she would regularly keep the firearm there. Based on this evidence, a reasonable jury could conclude that some occupant of the apartment intended to exercise dominion or control over the firearm on or about March 10, 2021, by trying to hide it from the police.

Moreover, a reasonable jury could have concluded that Mr. Sanchez—who was undisputedly aware of his felon status—had a motive either for hiding the gun himself or, at the least, for ensuring that it was hidden by another. This could bear on

the constructive possession inquiry. *See United States v. Foster*, 891 F.3d 93, 111 (3d Cir. 2018) ("Factors we have considered when determining whether the government has proven dominion or control include '*evidence that the defendant attempted to hide or destroy the contraband*, . . . that the defendant lied to police about his identity,' and the defendant's proximity to the prohibited item." (omission in original) (emphasis added) (quoting *United States v. Jenkins*, 90 F.3d 814, 818 (3d Cir. 1996))).

Even if there was not sufficient evidence to show that Mr. Sanchez himself hid the firearm—which we need not decide[5]—evidence showing that the firearm was, in fact, hidden is nevertheless illuminating. After all, Mr. Sanchez admittedly knew of his felon status and that he could not legally possess a firearm. In light of this, a reasonable jury could conclude that the fact that somebody hid the firearm as the officers approached the home was probative evidence that militated in the

---

[5] The government argues that "[a] reasonable inference from all this evidence is that [*Mr.*] *Sanchez* is the person who was moving around downstairs and that he hurriedly put the firearm in the purse as a ruse to distance himself from it." Aplee.'s Resp. Br. at 13 (emphasis added). For his part, Mr. Sanchez argues that "even if the evidence allowed for the reasonable inference that the gun was hidden in the purse when the police were at the door—and it does not—there was no way to attribute this action to Mr. Sanchez rather than to Ms. Flores. . . . [That is,] even on [the government's] hiding theory, it was a 'toss-up' as to who did the hiding." Aplt.'s Opening Br. at 31 (quoting R., Vol. III, at 358).

We need not resolve whether the evidence actually supports an inference that it was Mr. Sanchez who hid the gun. Irrespective of whether it was Mr. Sanchez himself who did the hiding, the jury could have considered the fact that the gun was hidden in determining whether Mr. Sanchez, who was admittedly aware of his felon status, had the necessary intent. *See United States v. Fields*, 977 F.3d 358, 366 (5th Cir. 2020); *United States v. Benjamin*, 711 F.3d 371, 377 (3d Cir. 2013).

government's favor on the question of whether Mr. Sanchez intended to exercise dominion or control over the firearm. *See United States v. Fields*, 977 F.3d 358, 366 (5th Cir. 2020) (observing, in a case in which both Mr. Fields, a felon, and his romantic partner were in a hotel room with a firearm haphazardly hidden in a bag, that "[a] rational jury could infer that the pistol had been in plain view until the police knocked on the door, after which the firearm was quickly hidden"); *United States v. Benjamin*, 711 F.3d 371, 377 (3d Cir. 2013) (finding it relevant to the issue of whether Mr. Benjamin, a felon, had "dominion and control" over a gun that his romantic partner "hid the gun in the basement" after Mr. Benjamin told her that his parole officer was at the door).

Accordingly, given the evidence presented at trial that: (1) Mr. Sanchez's DNA was on the firearm; (2) Mr. Sanchez previously *handled* the firearm; (3) the gun was loaded; and (4) someone hid the firearm in the kitchen by the front door when police arrived, "a rational trier of fact could find, beyond a reasonable doubt," that Mr. Sanchez intended to exercise dominion or control over the firearm on or about March 10, 2021. *Stepp*, 89 F.4th at 835.

\*\*\*

Confronted with the "high hurdle" that Mr. Sanchez must clear to prevail on his insufficiency-of-the-evidence claim, *Voss*, 82 F.3d at 1524, we conclude that he cannot prevail. Specifically, the evidence presented at trial was sufficient for a reasonable jury to find beyond a reasonable doubt that Mr. Sanchez "knew of, had access to, and intended to exercise dominion or control over the" firearm on or about

23

March 10, 2021. *Stepp*, 89 F.4th at 832 (quoting *Johnson*, 46 F.4th at 1187).

Therefore, the evidence was sufficient to convict under a theory of constructive

possession, and we affirm Mr. Sanchez's conviction for being a felon in possession

of a firearm.[6]

## IV

For the foregoing reasons, we **AFFIRM** the district court's judgment.

Entered for the Court

Jerome A. Holmes
Chief Judge

---

[6] Because we conclude that the evidence was sufficient to uphold Mr. Sanchez's conviction under a theory of constructive possession, we need not opine on whether the evidence was sufficient under a theory of actual possession. *See Samora*, 954 F.3d at 1290 n.2 ("We need not address the sufficiency of the evidence with respect to actual possession because we conclude that the evidence of constructive possession was sufficient.").